**NONPRECEDENTIAL DISPOSITION**
To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals
**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted June 3, 2019*
Decided June 4, 2019

**Before**

JOEL M. FLAUM, *Circuit Judge*

MICHAEL Y. SCUDDER, *Circuit Judge*

AMY J. ST. EVE, *Circuit Judge*

No. 19-1193

| | |
|---|---|
| LINDA SLEDGE, *Plaintiff-Appellant*, | Appeal from the United States District Court for the Northern District of Illinois, Eastern Division. |
| *v.* | No. 15 C 9085 |
| ROBERT WILKIE, Secretary of Veterans Affairs, *Defendant-Appellee*. | Thomas M. Durkin, *Judge*. |

**O R D E R**

Linda Sledge was fired from her position as a nurse practitioner with the Department of Veterans Affairs after she failed to maintain a collaborative agreement with a physician—a requirement of her job. She has sued the Secretary of the Department, alleging that she was fired because of her race, age, perceived disability, and for complaining to the Equal Employment Opportunity Commission about her

---

* We have agreed to decide the case without oral argument because the briefs and record adequately present the facts and legal arguments, and oral argument would not significantly aid the court. FED. R. APP. P. 34(a)(2)(C).

supervisors. After finding no evidence of discrimination or retaliation, the district court entered summary judgment for the Secretary. Because on this record no reasonable jury could rule in Sledge's favor on her claims, we affirm.

Sledge worked for the Department from 2006 to 2014, first at the Jesse Brown Medical Center in Illinois, and then at the Adam Benjamin Clinic in Indiana. Because her job at Adam Benjamin included prescribing lab work and medication, it required that a physician formally agree to supervise her through a collaborative agreement. As relevant to this appeal, in 2012 Dr. Daolong Zhang and Dr. George Paniotte agreed to collaborate with her as supervising physicians at Adam Benjamin. The collaboration did not last long. At the beginning of 2013, Sledge received a low rating in a performance review from her direct supervisor, Deloach Hamilton, and later that year, several of Sledge's coworkers criticized her work and accused her of incompetence, insurance fraud, and breaching client confidentiality. Paniotte and Zhang withdrew from the collaborative agreements by January 2014, citing Sledge's poor communication and quality of care. Paniotte pointed to two incidents in particular—a misdiagnosis and a failure to diagnose—that motivated his withdrawal.

Because Sledge no longer had a collaborative agreement, she could not work as a nurse practitioner. As a result, she was reassigned as a float nurse while she looked for a physician to agree to supervise her, and she temporarily transferred back to Jesse Brown. She also decided in January 2014 to file a charge of discrimination with the EEOC against Hamilton and Paniotte. (This was her third charge against the Department. She had filed her first charge six years earlier against another supervisor at Jesse Brown, and her second charge four years earlier against Dr. Zhang.) In June, the Department notified Sledge that it would terminate her employment for failure to maintain a collaborative agreement; in October, it followed through and fired her.

After her discharge, Sledge unsuccessfully sought administrative remedies from the EEOC, and this suit followed. She invoked Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*; the Age Discrimination in Employment Act, 29 U.S.C. § 633a; the Rehabilitation Act, 29 U.S.C. § 794; and the Whistleblower Protection Act, 5 U.S.C. § 2302(b). She alleged that the Department fired her because of her race (African American), age (58), and perceived disability (depression), and for filing EEOC charges. Discovery was prolonged. The district court patiently explained the discovery process to her, granted her extensions of time and motions to compel, and ordered the Secretary to work with Sledge to resolve her discovery requests despite their nonconformity to the rules. Sledge declined to take any depositions or request specific documents from

the Department. Eventually, the district court entered summary judgment for the Secretary. It explained that Sledge had not exhausted her administrative remedies under the Whistleblower Protection Act and had not presented enough evidence of discrimination or retaliation for a reasonable jury to return a verdict in her favor.

On appeal, Sledge first argues that the proceedings in the district court violated her right to due process under the Fourteenth Amendment. She contends that the district court "offered protection to the defendant allowing them to thwart discovery for one year," "never considered" the Secretary's motion for summary judgment before granting it, and "failed to acknowledge" her jury demand.

These arguments are without merit. To begin with, Sledge's arguments attempt to bypass the Federal Rules of Civil Procedure—but it is these rules that govern the discovery process. *See United States v. Vargas*, 915 F.3d 417, 420 (7th Cir. 2019). Nothing in the record suggests that the district court misapplied the discovery rules to favor the Secretary inappropriately. To the contrary, the district court took pains to explain the process to Sledge, granted her multiple requests for more time and additional discovery, and directed the Secretary to work with her. *See* FED. R. CIV. P. 26(f). Sledge chose for herself not to take a deposition or seek specific documents. Nor is it correct that the district court failed to consider fully the Secretary's motion for summary judgment, as the court's thorough memorandum opinion granting that motion shows. Finally, her argument that the district court did not consider her jury demand fails. When the case ended at summary judgment (after the court ruled that a reasonable jury could not find in her favor), the jury demand became irrelevant. *See* FED. R. CIV. P. 56(a).

Sledge goes on to challenge whether summary judgment was proper. She insists that the district court erroneously made "all inferences in favor of the defendant's position," failed to consider the evidence that she presented, and wrongly prevented her from orally arguing against the Secretary's motion for summary judgment. We review summary judgment de novo and construe all the facts and evidence presented in her favor. *See Morgan v. Schott*, 914 F.3d 1115, 1118 (7th Cir. 2019).

The district court properly entered summary judgment for the Secretary on Sledge's discrimination claims. To begin with, the district court was not required to allow Sledge to present oral argument against the motion; "many summary judgment motions are decided without oral argument." *Smith v. Bray*, 681 F.3d 888, 903 (7th Cir. 2012) (overruled on other grounds); *Henkin v. Gen. Elec. Credit Corp.*, 925 F.2d 231, 233 (7th Cir. 1991). Turning to her discrimination claim, regardless of the method that a

plaintiff uses to try to prove discrimination, the core question at summary judgment is "whether a reasonable jury could find prohibited discrimination." *Poullard v. McDonald*, 829 F.3d 844, 854 (7th Cir. 2016). As the district court correctly observed, Sledge presented no direct evidence, so to get to a jury trial, she had to present evidence that would permit a jury to infer discrimination. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). Evidence that would permit a jury to make such an inference includes evidence that Sledge was meeting her employer's reasonable expectations and that the employer treated other similarly situated employees differently. *See Poullard*, 829 F.3d at 854. But Sledge provided no evidence of either point. Nor did she rebut the Secretary's ample evidence that she underperformed in her work and lacked a collaborative agreement, and therefore did not meet her employer's reasonable expectations. Finally, she offered no evidence that either Dr. Zhang or Dr. Paniotte withdrew from her collaborative agreement for reasons other than her poor communication and low-quality care. (Although Sledge maintains on appeal that she argued to the district court that Dr. Zhang withdraw for legally forbidden reasons, nothing in the summary-judgment record supports this contention.)

That brings us to the retaliation claim. Sledge furnished no evidence that the adverse actions (withdrawals from her collaborative agreement, criticisms of work, and discharge) were motivated, even in part, by her EEOC charges. *See Bagwe v. Sedgwick Claims Mgmt. Servs., Inc.*, 811 F.3d 866, 887–88 (7th Cir. 2016). She pursued her first two charges several *years* before the doctors' withdrawals from her collaborative agreement and the criticism of her work in 2013 and 2014. With such a long gap between the charges and these adverse actions, the latter cannot be said to be suspicious based on timing. *See Baines v. Walgreen Co.*, 863 F.3d 656, 665 (7th Cir. 2017). The third charge came *after* these adverse actions, so the charge could not have caused them. True, this charge came about five months before Sledge was notified of her discharge. But that fact alone is not enough to create a triable claim of retaliation; for one thing, a time lag of five months, by itself, is insufficient to support an inference of retaliation. *See Harper v. C.R. England, Inc.*, 687 F.3d 297, 308 (7th Cir. 2012). In any case, Sledge never contradicted the evidence that she was fired because she had failed to maintain the required collaborative agreement. Accordingly, summary judgment was proper.

Sledge also argues that some of the evidence on which the district court based its entry of summary judgment was "fraudulent." She contends that her deposition was fraudulent because she never signed the transcript, and that the collaborative agreement was fraudulent because, she says, the Secretary altered it. These arguments are baseless. A deponent's signature is required only if the deponent made changes to

the deposition transcript after giving testimony, and Sledge does not argue that she changed her testimony. *See* FED. R. CIV. P. 30(e) advisory committee's note to 1993 amendment. And the district court's entry of summary judgment was based on the doctors' *withdrawals* from the agreements, not the agreements themselves.

Finally, Sledge contends that the district judge should have recused himself, but this argument also lacks merit. To succeed, Sledge needed to provide at least some evidence "of actual bias," *Hoffman v. Caterpillar, Inc.*, 368 F.3d 709, 718 (7th Cir. 2004), and she provided none.

AFFIRMED